Number 06-3158, Bolden v. Department of Veterans Affairs. Mr. Andrew, welcome. Good morning. Please proceed. Channis Bolden, a tenure employee at the Department of Veterans Affairs, was fired because he was incarcerated not by his will. There's no indication that it was voluntary. There's no indication that it was voluntary. That wasn't the reason that he was disciplined, though. He wasn't disciplined because he was found guilty of some theft. He was disciplined because he missed work. Two of which were the consequence of his thievery that got him arrested. Well, the question becomes, first of all, in terms of the theft, he's never charged with theft. There's no claim that he was charged with theft. He was charged with unlawful possession. All right. The essence of it I'm characterizing as theft, but you're quite correct that the name of the charge to which he pleaded guilty was unauthorized possession. Correct. A plea to a charge is less than a traffic theft. Less significant than a traffic theft. That may be, but the question is, isn't it true that the deciding official as to penalty relied on both the business about the toilet paper and the AWOL charges? Yes, and the point that I'm making, though, is that although we're not quarreling with the fact, although I don't think it generically makes a whole lot of sense, that they seem to argue that they do not allow absences when a person is incarcerated, regardless, because they said no matter what the circumstances. If you were falsely charged with whatever and you're incarcerated, that absence is common against you under all circumstances. In fact, that was part of the argument that was made, that we don't have to worry about the conflict as to whether or not there was appropriate notice given of whether he was incarcerated because of the fact that under all circumstances, no matter what, if the person is incarcerated, it's counted as an unexcused absence. Now, if that's the rule they want to follow, I'm not quarreling for a different rule. My point is that Douglas factors require that you take into consideration the totality of the circumstances. Well, I didn't see any indication that the hospital administrator, I believe his name was Hetrick, failed to take into account any of the circumstances that were put before him. The only thing that you have as an indicator that he, in fact, did follow Douglas factors is a check sheet that simply checks the marks saying there's no discussion. Well, you could have called him as a witness at the hearing if you thought that his check marks were somehow misleading or incomplete or fraudulent or something. You could have cross-examined him about what he really considered specifically. Well, he was at the hearing, and we did cross-examine him. And his statement simply was that because of the budget and because of the fact that we're so concerned about the budget, in this case, it's less than $5 worth of toilet tissue here. We're concerned about the budget, and that's the reason. But I thought he also expressed concern about the unanticipated absence of certain workers charged with cleaning important parts of the hospital, including operating rooms. That was actually Mr. Ross. That was his supervisor. Mr. Chairman's closing supervisor said that was his concern. I stand corrected. Are you saying that the deciding official in his testimony didn't care about the unanticipated absences, that his whole reason for choosing or upholding the recommendation of removal was because of the impact on the budget of, let's say, $5 worth of toilet tissue? Absolutely. That is what I'm saying. That's exactly what he's saying. That was his sole reason, according to your recollection. Other than what they announced as being an ironclad rule that cannot be mitigated under any circumstances. But I thought your position was that Hetrick, the deciding official, relied solely on the budgetary impact of the unauthorized possession, the $5 theft as I'm calling it, and not at all on the AWOL. No, I'm not saying not at all on the AWOL. Hetrick, we know that the recommending official talked about the AWOL. My question is whether Hetrick, as the deciding official, relied on both the AWOL and the toilet tissue. It's unclear from the record because in the items that were written on the form, I believe it was on the Douglas Factor form, he made a little note himself. But you questioned him about the form. I questioned him about his rationale. Including about the marks on the form. But we don't have that testimony. No, we do not. And that's because I don't quarrel with the facts in the record. Well, there's two reasons for that, quite frankly. One is my client couldn't afford the transcript. Even of one witness? No, you either get the transcript or you don't get the transcript. It's a taped proceeding that they do, at least in Chicago. So it's not like you can call a court reporter and say, parcel this out. So the transcripts were not obtained because there really was no quarrel with the judge's interpretation of the facts that were presented at the hearing. That really wasn't the key here. Our argument here is that the penalty doesn't fit the crime, basically. That there was an abuse of discretion here because of the fact that what we're really talking about is less than $5 worth of government so-called property that he didn't take for himself. That he took and put in the trunk of a car of a co-worker. But what about the problem of running a hospital where custodial cleaning aides may not show up with no advance notice, and therefore there's no chance for the hospital to call in pinch hitters in order to maintain adequately timely and thorough cleaning of important parts of the hospital? That sounds like a fairly important thing. If there are 10 custodial workers and five of them don't show up on a given day with no advance notice, that could have a serious impact. Two points. One, that had already occurred before the so-called unlawful possession. There was no desire. There was no proposed removal as a result of that. So that was the most important factor in this whole thing. He should have been fired before he ever got to the toilet tissue issue. No. Because of the one day of AWOL that preceded the tissue incident. Well, my point is that there already had existed those absences before the issue of the toilet tissue came up. I'm not talking about the absences that he was warned about. I'm talking about the one day separate from the arrest. Two days for the arrest, one day without the arrest.  Yes, it was. That's what I thought. Yes, it was. So you're, in effect, saying, if I understand you correctly, that hey, if they had to fire people because of AWOL, they would have already fired him for the one day of AWOL he had prior to the… Well, actually, it would have been all of it. I mean, if those issues, the AWOL issues, were the crux of the matter, then they didn't need to talk about the toilet tissue issue. That's irrelevant. Because the toilet tissue issue has nothing to do with AWOL. And the toilet tissue issue is so minute, so insignificant, that even if you look at how Judge Nolan, Magistrate Judge Nolan, handled that so-called hearing on the plea, and we all know because it's a petty offense that you don't have to give all kinds of constitutional admonitions and everything, she just kind of, in passing, said, look, do you want to just pay a fine and get rid of this thing? I mean, even if it were a traffic ticket, at least he'd have some jeopardy to his record concerning his driver's license. There's nothing here. He's going to get a fine because he took some toilet tissue to a person's car. He says he didn't know whether it was government toilet tissue or not. And frankly, at the hearing, nobody could determine whether it was government toilet tissue or not. And even if you look at the record here, it makes it clear that somebody had to be called to the police station to determine whether this was government toilet tissue or not. It's toilet tissue. It's generic is the word that's used in the record as to what it is. It's generic toilet tissue that he doesn't take for himself, that the VA is ultimately going to… So isn't the essence of this case that the penalty could have been a suspension or it could have been a removal, and maybe the better, wiser, fairer, nicer choice might have been a 60-day suspension? That seems to be part of what you're implying. Well, that is part of it, yes. But the problem I have with that is it may be that it would have been a wiser choice to have, for example, a 60-day suspension rather than a removal. But the question we have to answer is whether on these facts, by selecting removal when it could have been a 60-day suspension, the agency went so far out of the range of reasonable choices as to be engaging in a penalty that's grossly disproportionate to the sum total of the found charges. That's a much more difficult standard to meet. It certainly is. But the key in what you said is reasonable. This is not reasonable. It's not reasonable that if eight laws are caused because a person is incarcerated, it's not reasonable if the so-called unauthorized possession was to take toilet tissue less than $5 value and put it in somebody's trunk, that after 10 years of service and after military service, that you should lose your job. That is my point. And I'd like to say I've been balancing my time very well. Thank you, Mr. Henry. Mr. Pease. May it please the Court. The decision of the Merit Systems Protection Board should be affirmed because it is in accordance with law and supported by substantial evidence. To begin with the point that I think the Chief Judge asked your opposing counsel about the AWOL policy, is it the case that at least this agency would view AWOL for whatever reason you were incarcerated, but AWOL in which you were incarcerated no matter how unjustifiably as being a punchable offense? In other words, I'm picked up on a warrant for the wrong person and I'm thrown into jail for three days and I'm absent without leave. I gather that the VA does not give leave in that setting, so I presume it would be AWOL. How do I go about taking care of that problem? Your Honor, in this case the administrative judge, the board, did find that there was testimony stating that AWOL is not granted for incarceration, although that's really the only evidence we have. We don't have the transcript of the hearing just to know what nuance the deciding official was giving to that. Assuming the facts, or considering the facts of this case, Mr. Bolden never made any effort to make any explanation that this incarceration should somehow have been an excused absence. One, he didn't comply with the leave procedures in actually requesting and receiving approval for leave, even emergency leave in which he would have to call either prior to that day or in the first two hours and receive approval for that leave, in which case the supervisor would be able to weigh the needs of the agency against the needs of the employee. He didn't request that and he certainly didn't receive it. But in addition to that, he was given a letter of inquiry later, at which point he had the opportunity to present any excuses and he did not. There's nothing in the record to indicate that he presented an excuse that I was incarcerated merely because I was unlawfully detained or some other type of excuse. It wasn't presented in this case. So we have both a perhaps imprecise characterization, we just don't know from the testimony, that jail time is never excused for AWOL. There may certainly be excuses surrounding incarceration that potentially could have had an effect, we just don't know that under the facts of this case. So we really don't reach the issue of whether in an abstract sense a person unlawfully incarcerated may be entitled to AWOL if they request and get approved leave or are denied solely because they're incarcerated. It's not squarely presented here. In addition, and part of the reason why it's not squarely presented, both because we don't have the hearing transcript to have that evidence, the other aspect is the December 19th date is not contested whatsoever. There's no allegations in the opening brief and there was no reply to state that on December 19th Mr. Golden had some excuse or on December 19th that he in fact requested leave when that was not found. Was he ever warned at any point that the next time you're AWOL you're fired? Your Honor, I don't recall that that was in either the reprimand or the other disciplinary action. I can check because we have both, I believe we have both in the record, although I'm not certain. Here's what troubles me. As I understand it, roughly speaking, he had several prior incidents of AWOL for which he was not punished at all. He was admonished but not sanctioned with fine or demotion or removal. That's correct, he was disciplined, admonished and reprimanded. Those are letters that go in your file, right? A letter of admonishment or a letter of reprimand, so a letter goes in your file. The implication of that is that it's not necessarily a firing offense to be AWOL. Not at all, Your Honor. Let me retract that. It's not necessarily a firing offense, correct. Accept my characterization of the inference. Maybe it's not a fair inference, but one inference would be it's disapproved and you may get a letter but you won't be fired if you're AWOL. If the pattern of AWOL continues, certainly the agency would be justified in saying at some point, look at Mr. So-and-so, one more AWOL and we're going to fire you. And then if there is one more unexcused AWOL and they fire him, how could he complain? How could there be any lack of clarity? But as I understand it, nothing like that happened here. He went from some warnings in the form of letters in his file to removal with no intervening information that next AWOL and you're fired. Is that right? Is that the facts here? I don't recall whether in those letters it said whether the next offense would be AWOL or not. However, I don't think that that's critical to this case, both because the penalty, the table of penalties makes clear that the penalty. But the penalty isn't automatically reasonable under our case law simply because it's on the table. If it's off the table, there may be an inference of unreasonableness, but it doesn't become per se reasonable just because it is on the table. Correct, Your Honor. I was merely speaking to the issue that Your Honor raised regarding notice to Mr. Bolden that he potentially could be removed with another AWOL. Mr. Bolden was clearly on notice that AWOL was a offense punishable by removal. Yeah, sure. It's in the book. It's in the employee book. Let me ask you this. Aside from whether a warning might have been an appropriate intervening communication here, when I read the administrative judge's penalty discussion, it's really very terse. Page eight of the special appendix, most of the page is just boilerplate what the law is, and then page nine mostly discusses various things to which Mr. Hetrick testified. And then it seems like the decisional part with respect to penalty entirely consists of one sentence. The final paragraph at the bottom, S.A. 9, where the A.J. says, quote, I find here that the chosen penalty was not unreasonable for the two sustained charges, and I declined to mitigate the penalty, period, end quote. So there's a brief discussion of what the hospital administrator testified and then a conclusion, I find not unreasonable. How can we review that? Your Honor, you can review that by considering the board's discussion of Mr. Hetrick's testimony and that he in fact considered the Douglas factors. There's no claim here, as I understand it, that he didn't consider them. The claim is he misweighed them. And so when the A.J. simply says the testimony was A, B, C, and D, and then I find no unreasonableness, that's not much of an analysis. Your Honor, the analysis consists obviously of reviewing the testimony, reviewing the record, and it's presumed that the agency, that the administrative judge reviewed all the evidence in the record. There's nothing to indicate here that the penalty is not unreasonable. I'm not saying that the A.J. didn't listen carefully to all the testimony and read all the documents. What I'm saying is that based on that data, that input, the A.J. had to make an analysis that led to a conclusion. We've got the conclusion, we've got the input, but we don't have any analysis in between that I can discern. Am I missing something? Am I looking on the wrong pages? No, Your Honor. I think that it's fair to understand the administrative judge's decision, not only as simply laying out that the testimony existed, but that in fact, in considering that testimony, that that testimony in fact is credited, that the reasons were given by the judge. No, no. I'm entirely assuming that the A.J. believed everything that the agency official said, remembered it all, reviewed the testimony in her mind, read the documents, had all the input. But the problem is there's no analysis. And, Your Honor, my explanation or my… For example, look at the final sentence in the Penalty Paragraph on 9. The agency cannot perform its mission without employees being present and working. Well, of course not. That's a truism. But the logic of that would be any AWOL or maybe even late arrival in every case should lead to removal. And obviously that's not the way it is. That's not the way it's supposed to be. So what makes this case different from a case where AWOL would not justify removal? She never says that I can find. Your Honor, in discussing the testimony that's credited here, the administrative judge is in essence agreeing with the agency's determination throughout the opinion in describing it and describing the details of Mr. Bolden's offenses, the sustained charges. There's no requirement that the administrative judge re-weigh the Douglas factors individually. In fact, the determination of penalty is within the discretion of the agency. What about the Hillenversus Department of the Army? I thought that very specifically and exhaustively and in minute detail laid out a format that the A.J. was supposed to use in assessing factual matters brought to his or her attention. Your Honor, I apologize. I'm not familiar with the case. Well, it's a seminal case from 25 years ago, and as I read it and recall it, it doesn't suggest it requires that administrative judges analyze the evidence explicitly. And in this case, the administrative judge did analyze the evidence. I think that the analysis is intertwined with the description of the facts in the testimony and can be fairly understood to be an agreement by the administrative judge and the board here that the analysis or the explanation given by the agency is an acceptable analysis and is reasonable. And the administrative judge considered this testimony, considered the testimony that it saw of Mr. Bolden and considered whether the various pieces of testimony were credible. In addition, considered the reasons given by the agency official and analyzed those in the process of describing the facts and the reasoning and by affirming it and agreeing that this was not fact outside the tolerable bounds of reasonableness, in fact, agreed with the agency's reasoning to the extent that it was within the agency's discretion. And I don't believe that this opinion in any way indicates that the board made any sort of conclusory decision or in any way didn't consider the evidence or the analysis of the case. The fact that the penalty determination is within the discretion of the agency explains to some extent that the board does not go through an exhaustive Douglas factor by Douglas factor analysis. But you agree there are some AWOL cases in which removal would be an unreasonable and reversible penalty, right? Certainly there are some cases, Your Honor, and there are cases in which it's been removed. There are cases such that... Okay. So then the question becomes, how does the AHA sort the cases as they come to her to know which one go in the category of removal is reasonable in this case versus which one go in the category, in this case, removal not reasonable? Your Honor, I think the answer to that is that this is not a close case in terms of the AWOL's charge. There are prior instances of AWOL that clearly affect the efficiency of the service. The reprimand, admonishment, this instance of AWOL without excuse clearly affects the efficiency of service. Further, the deciding official here... Well, are you saying that even if pages 8 and 9 were altogether missing from the AJ's opinion, that the facts would be so clear and so uncontested that we would have to affirm anyway? Your Honor, not at all. The penalty section of the opinion clearly sets forth the facts and the analysis... You agree then that the penalty analysis has to be sufficient, whatever sufficient means? Your Honor... Or not. I don't know that I'm prepared to discuss that, but sufficient for the purpose of being able to determine that the administrative judge considered the appropriate law and facts, I guess I would concede that. But again, it's not an issue that's been squarely presented. If Your Honor or the Court believes there's actually an issue here of sufficiency of the administrative judge's decision, I'd be happy to brief that in detail, but it just hasn't been presented... Well, I wouldn't think briefing would do any good. If the analysis is deficient, presumably vacating and remanding would be the result. Your Honor, and I didn't mean to state that the Court believed the analysis was deficient. I believe if the Court believes there's an issue as to whether the standard to be applied to the sufficiency of the opinion, I think that would be an appropriate issue of law that should be briefed before the Court that hasn't been raised and hasn't been briefed. I don't believe there is an issue here. All right. Time has expired. Thank you, Mr. Andree. Four minutes are remaining. First of all, to answer the point that was raised by Judge Bryson, that is, is it inflexible that a person who is incarcerated has no argument that they can make for amelioration of the AWOL? If we turn to page 4 of the administrative judge's opinion, there at the top is the following paragraph. There's some dispute whether the appellant's mother, because his mother had actually worked with him and had called the agency to let him know he was incarcerated. There's some dispute whether the appellant's mother contacted the appellant's supervisors on the date in question or at any other time, and the testimony in this point is confusing. However, because the agency would not have granted leave to a jailed employee in any event, it is unnecessary to resolve the conflict. So that says to me it's inflexible. It doesn't make any difference if there's a misidentification. It doesn't make any difference whether every single constitutional right you have against arrest was violated. It's still AWOL. And even if that is the case, the Douglas factors tell you, fine, okay, the person should incur a penalty. We're not even arguing that point. We're not arguing that Mr. Bolden doesn't deserve a penalty. What we are arguing is that, in fact, the penalty that was imposed simply unreasonable. It doesn't fit what was claimed to have been done. And I think the point raised by Judge Michel, or Michael, I'm saying it on context to you, is that, well, how do we determine this? We cited a number of cases where, in fact, AWOL employees, in fact, AWOL plus employees, there was mitigation of the penalty of removal to a lesser charge, a lesser penalty. And so, clearly, it's not enough for an administrative judge to just say, take my word for it. You know, the reasons the agency did this make sense to me, and so, therefore, appeals court, therefore, superior authorities, you know, whatever it is that I say, you just are stuck with it. But the administrative judge did say, it seems to me as I read the two-page discussion of penalty, a little more than that. It seemed to me that she, for example, on page, oh, the next to last page, she talks about a comparison between Mr. Hetrick and Ms. Moore, the other employee involved in the incident. And says, well, Ms. Moore was given a lesser penalty because there's no past record nor the pending charge and no access to the agency's supplies. And then goes on to say that here he has this prior incidence and he also is, in effect, in a position of trust by virtue of his access to supplies. So it does seem to me that there's perhaps more than simply an assertion, a flat-out statement, it's reasonable, period, trust me. No, I'm not saying that that's what the judge felt. I'm saying simply that if counsel's argument is accepted, that simply because you say that the judge agreed with the agency, that's the end of the argument. That's not what I'm saying. So my point is simply that given the facts that are involved here, for example, if that AWOL is that significant, that he's critical to the operation of the hospital because he has to clean up things, then he should have been fired long ago for the AWOL. That's the point that Judge Michel has made, I think, implicit in the questions that he asked that I think is appropriate. If he wasn't fired long ago, I mean, weren't you at least misleading the guy to make him think? You know, because he did AWOL before. He never put a whole lot of energy into it before. Why should he put a lot of energy into it? So under all the circumstances, I think that vacating this penalty and or remanding it or adjusting the penalty is the appropriate thing. All right. Thank you. We'll take the case under advisory.